IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIFFANY TEAL, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:16-CV-2161-D-BK |
| | § | |
| FEDERAL EXPRESS CORP., ET AL., | § | |
| DEFENDANT. | § | |

**FINDINGS CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Order of Reference*, Doc. 111, Defendants' *Motion for Summary Judgment*, Doc. 107, is before the undersigned United States Magistrate Judge for findings and a recommended disposition. For the reasons discussed below, the motion should be **GRANTED**.

**A. Procedural History**

Plaintiff filed this *pro se* civil action against Defendant Federal Express Corporation ("FedEx"), her former employer, alleging: (1) violations of the Americans with Disabilities Act ("ADA") due to Defendant's retaliatory acts and subsequent termination of her employment; (2) violations of various state and federal criminal statutes; (3) violations of TEX. LABOR CODE § 21.2585(d); (4) defamation under state and federal law; (5) deprivation of her civil rights pursuant to 42 U.S.C. § 1983; (6) intentional infliction of emotional distress ("IIED"); and (7) libel, slander, and defamation in violation of state and federal law. Doc. 28 at 12-23, 28-29, 31-33, 35-36. Plaintiff sued Equifax Workforce Solutions ("Equifax") for: (1) violating several federal and state criminal statutes; (2) violating TEX. CIV. PRAC. & REM. CODE § 41.005(b)(2); (3) IIED; (4) deprivation of her civil rights pursuant to 42 U.S.C. § 1983; (5) violating TEX. CIV. PRAC. & REM. CODE § 41.003(a)(2); and (6) libel, slander, and defamation in violation of state and federal law. Doc. 28 at 23-30; 33-36.

To briefly summarize the allegations of the operative complaint, Plaintiff contends that after she called FedEx's employee hotline to file an ethics complaint regarding new job duties imposed on customer service representatives (including herself), FedEx retaliated against her and ultimately terminated her, using as pretext the excuse that she had profiled a customer in violation of company policy. Doc. 28 at 7-8, 13. Plaintiff further alleges that when she filed for unemployment benefits, FedEx and Equifax (who represented FedEx in the proceedings) lied to the Texas Workforce Commission ("TWC") and "tarnished her name" before the TWC and Plaintiff's former co-workers. Doc. 28 at 19, 21-26. Defendants now move for summary judgment on all of Plaintiff's claims.[1] Doc. 107.

**B. Applicable Law**

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec.*

---

[1] Although Plaintiff filed an "objection" to Defendants' summary judgment motion, Doc. 112, she chiefly addresses Defendants' alleged refusal to provide her with all requested discovery and does not point to any specific material facts in dispute or respond to any of Defendants' arguments with respect to her claims. Further, despite being given an additional opportunity to file a response to Defendants' motion, Doc. 143, she did not do so.

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587.

## C. Undisputed Facts [2]

The undisputed evidence of record reflects that Plaintiff was employed with FedEx, starting in January 2007, as a senior customer service representative and worked part time until her separation in November 2015. *See* Doc. 109 at 4-5, 9; Doc. 109 at 46 (Plaintiff's Deposition ("Pl. Dep.")). FedEx has a telephone hotline and online reporting system that employees can call anonymously and confidentially to report a known or suspected violation of law, FedEx's code of conduct and ethics, or other company policy. Doc. 109 at 93 (Harvey Decl.). On July 29, 2015, Plaintiff anonymously called the hotline to complain about newly assigned duties customer service representatives were being asked to perform, which included sorting freight and loading cans. *See* Doc. 109 at 18-19, 21 (Pl. Dep.). On July 30, 2015, Plaintiff called the hotline a second time, identified herself by name, and again complained about customer service representative responsibilities. *See* Doc. 109 at 43 (Pl. Dep.). Plaintiff did not complain of any form of discrimination during either of her hotline complaints. *See* Doc. 109 at 43 (Pl. Dep.).

On August 4, 2015, a customer drove into the warehouse of the FedEx location where Plaintiff worked. *See* Doc. 109 at 26-27 (Pl. Dep.). Plaintiff noted that the customer was a woman with children in the car and that she was wearing a hijab. *See* Doc. 109 at 27-28 (Pl. Dep.). Plaintiff thought the customer resembled the "White Widow Terrorist." *See* Doc. 109 at 27-28 (Pl. Dep.). Plaintiff proceeded to pull up a picture of the White Widow Terrorist on her work computer. *See* Doc. 109 at 27-29 (Pl. Dep.). Another customer service agent, Steven Green, assisted the customer

---

[2] Because Plaintiff did not directly respond to Defendants' summary judgment motion or allege any specific material facts in dispute, the Court is permitted to accept Defendants' facts as undisputed. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

3

with her package and placed it on the conveyor belt for shipping. *See* Doc. 109 at 29 (Pl. Dep.). In the meantime, Plaintiff called the DFW airport non-emergency police number ("courtesy police") to ask if the White Widow Terrorist was still alive. *See* Doc. 109 at 28, 30 (Pl. Dep.). The answerer at courtesy police did not know but told Plaintiff to remove the customer's package from the conveyor belt as a precaution. *See* Doc. 109 at 31-32 (Pl. Dep.). After Plaintiff called the courtesy police a second time, an officer came to the warehouse to follow up on her phone calls. *See* Doc. 109 at 32-33 (Pl. Dep.). Although FedEx policy requires that employees report suspicious or threatening behavior to management or FedEx security, Plaintiff did not do so. See Doc. 109 at 96 (Williams Decl.).

On August 5, 2015, Plaintiff's supervisors, Denise Garner and Phebia Williams, asked Plaintiff to give a written statement outlining the events of the previous day, and Plaintiff did so. *See* Doc. 109 at 7-8, 13, 34-36 (Pl. Dep.); Doc. 109 at 96 (Williams Decl.). After Plaintiff wrote her statement, Williams suspended her with pay pending the outcome of the investigation pursuant to FedEx policy. *See* Doc. 109 at 36-37 (Pl. Dep.); Doc. 109 at 96 (Williams Decl.). On August 11, 2015, at the conclusion of the investigation, Plaintiff was issued a warning letter for failing to follow FedEx protocol in reporting her suspicions about the customer to corporate security or management. *See* Doc. 109 at 39 (Pl. Dep.); Doc. 109 at 81-82 (FedEx Warning Letter); Doc. 109 at 96 (Williams Decl.). In addition to citing the reason for the discipline, the warning letter required Plaintiff to complete diversity training, placed her on a 90-day personal leave of absence, and told her to find a non-customer facing position with FedEx or her failure to do so would be considered her voluntary resignation from the company. *See* Doc. 109 at 40-41 (Pl. Dep.); Doc. 109 at 81-82 (FedEx Warning Letter).

While on her leave of absence, Plaintiff received packages from FedEx containing job postings, but she did not apply for any non-customer facing positions because she "did not feel as though [she] violated any policies." *See* Doc. 109 at 41-45 (Pl. Dep.); Doc. 109 at 85 (First EEOC

4

Charge).  After Plaintiff's 90-day leave of absence expired, she received a letter from FedEx stating that because she had not secured a non-customer facing position within the company, she had effectively voluntarily resigned her position.  Doc. 109 at 45-46 (Pl. Dep.); Doc. 109 at 83 (FedEx Resignation Letter); Doc. 109 at 96 (Williams Decl.).  Prior to Plaintiff's separation from FedEx, her senior manager did not know about Plaintiff's FedEx hotline complaints.  *See* Doc. 109 at 96 (Williams Decl.).

In August 2015, Plaintiff filed a claim for unemployment benefits with the TWC.  Doc. 109 at 91 (Grant Decl.).  Equifax is a non-legal third-party vendor that provides FedEx with unemployment case management services, including unemployment claims and hearings before the TWC.  *See* Doc. 109 at 91 (Grant Decl.).  Equifax responded to Plaintiff's unemployment claim on behalf of FedEx and represented FedEx in the hearings.  *See* Doc. 109 at 91 (Grant Decl.).  Cynthia Grant, a non-lawyer Equifax representative appeared at the TWC hearings held on November 15, 2015, December 29, 2015, and January 26, 2016.  *See* Doc. 109 at 91 (Grant Decl.).

In March 2016, following the conclusion of the TWC proceedings, Plaintiff filed a charge with the EEOC in which she alleged only that FedEx had retaliated against her due to her hotline complaints.  *See* Doc. 109 at 50-51 (Pl. Dep.); Doc. 109 at 84-86 (First EEOC Charge).  In May 2016, the EEOC issued Plaintiff a Right to Sue letter.  *See* Doc. 109 at 52 (Pl. Dep.); Doc. 109 at 87 (Right to Sue Letter).  Plaintiff filed her complaint in this case in July 2016 alleging, *inter alia*, both retaliation and disability discrimination. Doc 3; Doc. 28 (Amended Complaint).  After Defendants answered and asserted that Plaintiff had failed to her exhaust administrative remedies, Doc. 22, Plaintiff filed a second charge with the EEOC in May 2017, attempting to raise a claim of disability

5

discrimination (the "Second Charge").³  Doc. 109 at 88 (Second Charge).  The EEOC found that the Second Charge was not timely filed.  Doc. 109 at 89 (EEOC Dismissal Letter).

**D.  Arguments and Analysis**

As noted above, although Plaintiff filed an "objection" to Defendants' summary judgment motion, Doc. 112, she did not point to any specific material facts in dispute or respond to any of Defendants' arguments with respect to her claims.  As such, the Court could find that Plaintiff has abandoned all her claims.  *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (holding claim abandoned when the plaintiff did not address it in opposition to motions to dismiss and for summary judgment).  *But see Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (a court is not permitted to enter a "default" summary judgment, but is permitted to accept the movant's facts as undisputed when no response or opposition is filed).  Thus, the Court now addresses the merits of each of Plaintiff's claims.

*1.  ADA Discrimination Claim (as to FedEx)*

FedEx argues that Plaintiff's ADA claim fails because she did not exhaust her administrative remedies.⁴  Doc. 141 at 15-17.

The ADA prohibits covered private employers from discriminating against a qualified individual with a disability regarding job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  *See* 42 U.S.C. § 12112(a).  Under the ADA, a plaintiff must exhaust administrative remedies before filing suit in federal court.  *See Dao v. Auchan Hypermarket*, 96 F.3d

---

[3] Plaintiff did not note the nature of her disability in either the Second Charge or the operative complaint in this case.  Plaintiff testified during her deposition, however, that she was disabled due to posttraumatic stress disorder.  Doc. 109 at 61-62 (Pl. Dep.).  Nevertheless, Plaintiff never informed her human resources advisor at FedEx that she was disabled.  *See* Doc. 109 at 94 (Harvey Decl.).

[4] Although FedEx raises other arguments in support of the dismissal of Plaintiff's ADA claim, the Court need only address exhaustion as it is claim dispositive.

787, 789 (5th Cir. 1996). The exhaustion requirement is satisfied once the plaintiff files a timely EEOC charge and receives a statutory notice of right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

As noted above, Plaintiff's First Charge alleged only retaliation in relation to her hotline calls, and the EEOC found that her Second Charge, which alleged disability discrimination, was untimely. As such, Plaintiff has not exhausted her remedies with respect to her ADA discrimination claim, and FedEx is entitled to summary judgment on that claim.

   *2. Retaliation (as to FedEx)*

FedEx next argues that Plaintiff cannot establish a cause of action for retaliation because her two hotline calls complaining about the allegedly onerous duties imposed on customer service representatives are not "protected activity" within the meaning of the ADA. Doc. 141 at 24.

To establish a *prima facie* case of retaliation, Plaintiff must establish that (1) she engaged in protected activity; (2) she was subject to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). "Protected activity" includes opposing any employment acts or practices that are unlawful under the ADA. 42 U.S.C. § 12203(a). For example, protected activity includes filing charges with the EEOC alleging violations of the ADA. *Sherrod v. Am. Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998). When an employee complains about harassment without connecting the employment practices to her disability, however, such complaints do not constitute protected activity. *See Harris-Childs v. Medco Health Solutions, Inc.,* 169 Fed. App'x 913, 916 (5th Cir. 2006) (finding that the plaintiff had not engaged in protected activity, even though she complained of unfair treatment and harassment, because she did not demonstrate that she "put the employer on notice that her complaint was based on racial or sexual discrimination"); *cf.*

*Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 n.3 (5th Cir. 2007) (stating that a request for accommodation qualifies as a protected activity for purposes of an ADA retaliation claim).

As FedEx correctly contends, Plaintiff's calls related to the work duties for employees in her position, and she acknowledged that she did not mention having a disability during those conversations. *See* Doc. 109 at 18-19, 21-22 (Pl. Dep.). In fact, it was not until she placed the second call that she even identified herself. *See* Doc. 109 at 18-19 (Pl. Dep.). Complaining about general work conditions is not protected activity under the ADA, and FedEx therefore should be granted summary judgment on Plaintiff's retaliation claim.

   3. *Standing Under 3 U.S.C. § 417 (as to both Defendants)*

Section 417 provides as follows:

It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter.

A "covered employee" is defined in relevant part as "any employee of a unit of the executive branch, including the Executive Office of the President . . ." 3 U.S.C. § 411(c)(1). Because Defendants are not members of the executive branch and Plaintiff is not a covered employee under section 411, Defendants are entitled to summary judgment on this claim.

   4. *Defamation (as to both Defendants)*

Plaintiff alleged in her amended complaint that Defendants made unspecified defamatory statements during her unemployment hearings before the TWC, and those statements constitute libel and slander. Doc. 28 at 23, 25-26, 31-35. Defendants argue that Plaintiff's claim for defamation fails as a matter of law because any statements that were made during the course of her unemployment hearings before the TWC are privileged. Doc. 141 at 26-27.

Texas Labor Code section 301.047 provides that "[a]n oral or written statement made to the [TWC] or to an employee of the [TWC] in connection with the discharge of the [TWC's] or the employee's duties under [the Texas Unemployment Compensation Act] may not be the basis for an action for defamation of character." TEX. LABOR CODE § 301.074; *see Hardwick v. Houston Lighting and Power Co.,* 881 S.W. 2d 195, 198 (Tex. App.—Corpus Christie, 1994) (holding that statements made by an employer's representative to the TWC were absolutely privileged, as were statements made at a judicial or quasi-judicial hearing, and did not constitute "publication" for purposes of an action for slander); *Kirkland v. Racetrac Petroleum, Inc.*, No. 3:13-CV-1754-N, 2014 WL 982852, at *3 (March 13, 2014) (Godbey, J.) (dismissing with prejudice plaintiff's claim that defendant's statements to TWC representatives in connection with plaintiff's application for unemployment insurance were defamatory or libelous). Because Plaintiff does not point to any defamatory statements made outside of the TWC hearings, Defendants are entitled to summary judgment on her defamation claims.

    *5. Plaintiffs' Standing to Raise Claims Under Criminal Statutes (as to both Defendants)*

Plaintiff asserted claims in her amended complaint pursuant to various state and federal criminal statutes, to wit: (1) 18 U.S.C. §1621 (perjury); (2) Texas Penal Code §§ 37.02, 37.09 (perjury); and (3) Texas Penal Code § 7.22 (criminal responsibility of a corporation or association).[5] Doc. 28 at 21-26, 35-36. As Defendants correctly argue, Plaintiff lacks standing to bring a cause of action based on any of these criminal statutes. Doc. 141 at 27; *see Cort v. Ash*, 422 U.S. 66, 79 (1975) (noting that a plaintiff has no right to bring a private action under criminal statutes); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that the plaintiff lacked standing to challenge

---

[5] Plaintiff also noted in passing that Defendants aided and abetted discrimination in violation of Texas Penal Code § 21.056, Doc. 28 at 26, but there is no such statute.

9

the constitutionality of a Texas criminal statute because a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

    *6. IIED (as to both Defendants)*

Defendants argue that Plaintiff cannot maintain an IIED claim because she cannot demonstrate that their actions were sufficiently "extreme and outrageous." Doc. 141 at 28-30.

As an initial matter, an IIED claim is not viable in this case because it is based on the same facts that underpin all of Plaintiff's other claims. *See Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (noting that IIED claims were judicially created for the limited purpose of allowing recovery in those rare instances when a defendant inflicts severe emotional distress in an unusual manner for which the victim has no other recognized cause of action).

Even considering the IIED claim on the merits, however, Plaintiff has not shown that "(1) the defendant[s] acted intentionally or recklessly; (2) the defendant[s'] conduct was extreme and outrageous; (3) the defendant[s'] actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *see also McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998) (holding that to find an employer liable for IIED, the employer must engage in conduct that is so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (citation omitted). Indeed, courts have repeatedly dismissed IIED claims which stem from the way an employee was terminated under circumstances similar to those presented here. *See, e.g.*, *McConathy*, 131 F.3d at 564 (affirming summary judgment on plaintiff's IIED claim because her superior's general cruel and unfair treatment and threats to fire her were not sufficiently outrageous); *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 151 (5th Cir. 1996) (upholding summary judgment on IIED claim where plaintiff alleged that he was terminated without warning after long service, the company published false and defamatory reasons for his termination to

people inside the company, and his superiors were disrespectful or rude to him during his employment and in the termination meeting; further noting that virtually all of plaintiff's allegations fell "within the realm of an ordinary employment dispute."). For these reasons, Defendants are entitled to summary judgment on Plaintiff's IIED claim.

   7. *Violations of 42 U.S.C. § 1983 (as to both Defendants)*

Although Defendants do not directly address Plaintiff's section 1983 claims, summary judgment on the claims is warranted because Defendants are corporate entities. *See Cornish v. Corr. Servs. Corp*., 402 F.3d 545, 549 (5th Cir. 2005) (section 1983 does not reach "private conduct, no matter how discriminatory or wrongful").

   8. *Texas Labor Code Section 21.2585 (as to FedEx) and Texas Civil Practices and Remedies Code Sections 41.003(a)(2) and 41.005(b)(2) (as to Equifax)*

Plaintiff alleged in her complaint that FedEx is liable for damages under section 21.2585(d). Doc. 28 at 16, 20. That section provides that upon a finding that an employer engaged in an unlawful intentional employment practice, the court may award sums certain for compensatory damages. TEX. LABOR CODE § 21.2585. Similarly, Plaintiff contends that Defendants are liable for damages under sections 41.003(a)(2) and 41.005(b)(2), which govern exemplary damages and damages for "harm resulting from a criminal act," respectively. Doc. 28 at 28-30, 36; TEX. CIV. PRAC. & REM. CODE §§ 41.003, 41.005. Because Plaintiff has not successfully maintained any of her claims against Defendants, these damages provisions are inapplicable to her case.

### E. Conclusion

For the reasons outlined above, Defendants' *Motion for Summary Judgment*, Doc. 107, should be **GRANTED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on November 20, 2018.

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).